# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| OarFin Distribution, Inc., a Minnesota Corporation,<br><br>                   Plaintiff,<br><br>v.<br><br>Tony C. Nora, p/k/a "Dookie Blu," an individual,<br><br>                   Defendant. | Civil No. 11-863 (PJS/AJB)<br><br>**REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT** |

Maxwell S. Felsheim and Russell M. Spence, Jr., Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, MN 55439, for Plaintiff.

Tony Nora, 1310 West Avenue I, Temple, Texas 76504, pro se.

## INTRODUCTION

This matter is before the Court, United States Chief Magistrate Judge Arthur J. Boylan, on Plaintiff OarFin Distribution, Inc.'s ("OarFin's") Motion for Summary Judgment. (Docket No. 38.) The matter has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). A hearing was held on the motion on July 19, 2012 at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota. Russell Spence, Jr. and Maxwell S. Felsheim appeared on behalf of OarFin. Tony C. Nora appeared pro se.

OarFin seeks summary judgment on Defendant Tony Nora's counterclaims for breach of contract and defamation. OarFin also seeks summary judgment on the claims asserted by Nora in a separate but related case (Case No. 12-cv-393 (PJS/AJB)). For the reasons discussed below,

the Court recommends that Plaintiff's Motion for Summary Judgment be granted in part and denied in part.

## FACTUAL BACKGROUND

OarFin is a Minnesota corporation that distributes recorded music and other entertainment products. Nora is a recording artist who resides in Texas. Nora records music under the artist name "Dookie Blu."

On August 15, 2009, OarFin entered into a distribution agreement with Nora whereby OarFin would distribute songs owned by Nora. (Docket No. 42, Affidavit of Robert Pickering ("Pickering Aff."), Ex. A.) OarFin worked with eOne Entertainment ("eOne") on distribution of Nora's album. (*Id.* at ¶¶ 10-11; Docket No. 51, Nora Opposition Memorandum ("Nora Mem.") at p. 2.) OarFin and eOne prepared Nora's album for release and distribution. (Pickering Aff. ¶ 11.)

On July 29, 2009, Nora had sent OarFin a set of songs entitled "My Testimony" and certain album artwork. (Pickering Aff. ¶¶ 5, 7.) OarFin and eOne used these materials, including the "My Testimony" title and album cover artwork, for distribution and promotion of Nora's album. (*Id.* at ¶ 11.) After July 29, 2009, Nora provided OarFin with different album artwork for use with his album and informed OarFin that he wanted the album to be entitled "Section 8 R&B." (*Id.* ¶ 12.) Thereafter, OarFin and eOne used this album artwork and album title for future promotion and distribution. (*Id.* at ¶ 13.) The August 15, 2009 distribution agreement does not specify the name under which the album was to be released. (*See Id.* at Ex. A.)

Nora's album was released on November 24, 2009. (Nora Mem. at p. 4.) The album was distributed under several different artist names and album titles, including artist names "Dookie

2

Blu" and "Dookie Blue" and album titles "My Testimony," "Section 8 R&B," and "Section 8 My RB." (*See* Nora Exs. C, D, E, I, J, K.) OarFin distributed explicit versions of the album. (*See* Nora Ex. C.)

On March 10, 2010, the parties executed an Agreement and Release (the "Release Agreement") in which they agreed to terminate their relationship. (Docket No. 40, Plaintiff's Memorandum ("OarFin Mem.") at p. 4.) Pursuant to the Release Agreement, OarFin agreed to pay Nora $15,000, "representing full and final payment in respect of any and all monies becoming due and payable to you." (Pickering Aff., Ex. C.) The Release Agreement required OarFin to notify "each and every distributor, retailer or other third party who may be engaged in any exploitation of the Distributed product and notify them that OarFin will no longer be representing the title as distributor" and to "return to [Nora] any inventory that they currently have in their possession currently at 240 units." (*Id.*) In exchange, Nora agreed to release all claims against OarFin. (*Id.*)

After the parties executed the Release Agreement, OarFin notified eOne that OarFin no longer represented Nora or his music as a distributor. (Pickering Aff. ¶ 16.) On or about March 17, 2010, eOne sent an e-mail to several retailers advising them that they had lost digital rights to the album, "Dookie Blue My Testimony." (Nora Ex. D.)

In June 2010, Nora contacted OarFin and eOne and told them that his album "Section 8 R&B" was still available in retail stores and available for purchase from OarFin/eOne. (*See* Nora Ex. A.) In response, an eOne vice president advised Nora that eOne never released or distributed the album under the name "Section 8 R&B." (Nora Ex. A.) However, OarFin acknowledges in its summary judgment papers that it did distribute Nora's album under the name "Section 8 R&B." (*See* OarFin Mem. at pp. 3-4; Pickering Aff. ¶¶ 13, 19.)

On April 26, 2011, shortly after the filing of the lawsuits, eOne sent an e-mail advising several retailers that it had lost the rights to the Dookie Blu album "Section 8 R&B." (Nora Ex. E.) There is no information in the record regarding whether OarFin or eOne notified retailers that it no longer had the right to distribute the album entitled "Section 8 My RB." Between March 2010 and April 2011, the Dookie Blu album "Section 8 R&B" was newly distributed to multiple retailers. (*See* Nora Ex. E at p. 3; Nora Ex. G.) Sales of Nora's album occurred under the album titles "Section 8 R&B" and "Section 8 My RB" during this time period and thereafter. (*See* Nora Exs. G, I, J.)

On December 21, 2011, Nora purchased a single track from his album on the website "artistxite.com," which receives its audio content from the digital media delivery company 7digital. (*See* Nora Ex. F.) Nora was deposed on the same day and testified as to its purchase at his deposition. (Nora Mem. at p. 7.) The next day, 7digital received an urgent takedown e-mail from eOne regarding Nora's album. (Nora Ex. G.)

## PROCEDURAL HISTORY

On April 7, 2011 OarFin filed this lawsuit against Nora for breach of contract, defamation, and tortious interference with prospective business advantage. (Docket No. 1.) On April 11, 2011 Nora filed a separate lawsuit for copyright infringement captioned *Tony Nora a/k/a Dookie Blu v. OarFin Distribution, Inc., Robert C. Pickering, Jr., E1 Entertainment U.S. LP, and Koch Entertainment LP*, No. W-11-cv-0083, in United States District Court for the Western District of Texas. On June 13, 2011, Nora answered OarFin's complaint in this litigation and brought counterclaims against OarFin for breach of contract and defamation of character and professional reputation. (Docket No. 3.) On February 15, 2012, the action

4

commenced by Nora in Texas was transferred to this District (the "Related Case"). (Civil No. 12-393 (PJS/AJB), Docket No. 33.)

OarFin filed the present motion for summary judgment on June 7, 2012 and noticed the hearing for July 19, 2012. (Docket Nos. 38-39.) Pursuant to the applicable local rules, Nora's papers opposing OarFin's motion were due on June 28, 2012. Nora filed his response in opposition to Plaintiff's summary judgment motion on July 14, 2012. (Docket No. 49.) On July 16, 2012, Nora filed a motion requesting that the court accept his late papers and filed an amended opposition brief. (Docket Nos. 51-52.) In Nora's motion, he reminded the court of his pro se status and asked the court to accept his late filing so that he could have a fair opportunity to present his case. At the hearing, counsel for OarFin requested that Nora's late papers be stricken, arguing that Nora had assistance of counsel in Texas and that Nora's opposition was filed only a few days before the hearing.

Although Nora's opposition to summary judgment was filed late and it appears that Nora has had the assistance of counsel in some respects, courts generally grant pro se litigants some leniency and exercise caution in dismissing the claims of pro se plaintiffs. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). OarFin has not argued that it will be prejudiced by the Court's acceptance of Nora's opposition papers and the Court finds that the interest of justice requires consideration of the materials submitted by Nora. The Court therefore declines to strike Nora's opposition papers and grants Nora's Motion for Leave to File a Late Response (Docket No. 52). However, the undersigned will not accept any future late filings from Nora.

**DISCUSSION**

I.   **STANDARD OF REVIEW**

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and it must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).

II.  **ANALYSIS**

   A.   **Nora's Counterclaim for Breach of Contract**

Nora asserts in his breach of contract counterclaim that OarFin's continued distribution of his album after March 10, 2012 violates the Release Agreement because the Release Agreement terminated OarFin's authority to market, distribute, and sell his work.

In support of its summary judgment motion, OarFin argues that even if it continued to market, distribute, and sell Nora's work after the Release Agreement, Nora's breach of contract claim fails because the Release Agreement did not explicitly revoke OarFin's right of distribution. OarFin argues that it satisfied its obligations under the Release Agreement, which were to: 1) pay Nora $15,000, 2) return 240 physical copies of Nora's album, and 3)

contemporaneously notify OarFin's existing distributors at the time of entering into the Release Agreement that OarFin no longer represents Nora's album.

"A claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay, & Polgaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). The only element at issue in this motion is whether OarFin breached the Release Agreement.

OarFin's argument regarding its obligations under the Release Agreement requires the Court to interpret the contract. The construction and effect of a contract generally are questions of law for the court. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn. 1979). The court's role in interpreting a contract is to determine and give effect to the intent of the parties to the contract as expressed in the language used in drafting the contract as a whole. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn. 1997); *Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.*, 470 N.W.2d 118, 122-23 (Minn. 1991). "In interpreting a contract, the language is to be given its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn. 1998). The court is to assess the meaning assigned to the words or phrases in accordance with the apparent purpose of the contract as a whole. *Art Goebel, Inc.*, 567 N.W.2d at 515.

Here, OarFin argues that the terms of the Release Agreement did not require it to stop distributing Nora's album and therefore its continued distribution did not violate the agreement. But the Release Agreement *did* require OarFin to notify all relevant third parties that it was no longer the distributor of the album. The Release Agreement specifically states that "OarFin will no longer be representing the title as distributor." Giving plain and ordinary meaning to the

notice clause, it reflects the intention of the parties that OarFin no longer is to be the distributor of Nora's album. This intention also is reflected in other clauses of the Release Agreement, for example, the requirement that OarFin return to Nora all physical copies of the album and the promise that "all companies will make best efforts to delete the title from distribution of OarFin's catalog." Viewing the Release Agreement as a whole, it is clear that the intent of the parties was to terminate their existing distribution relationship, ending OarFin's distribution of the album. OarFin's argument is inconsistent with its obligations under the Release Agreement and the apparent purpose of the Release Agreement as a whole. Nora has presented evidence that his album continued to be distributed to new retailers after the Release Agreement was executed. The Court therefore recommends that summary judgment in favor of OarFin is not appropriate on Nora's breach of contract counterclaim.

OarFin also argues that it is entitled to summary judgment on Nora's breach of contract counterclaim because it is undisputed that it: 1) paid Nora $15,000, 2) returned 240 physical copies of Nora's album, and 3) contemporaneously notified OarFin's existing distributors at the time of entering into the Release Agreement that OarFin no longer represented Nora's album. There is no dispute that OarFin paid Nora $15,000 and returned to Nora 240 physical copies of Nora's album. However, Nora contends that although OarFin and/or eOne notified some retailers that it had lost the digital rights to the album "My Testimony" shortly after the execution of the Release Agreement, they did not contemporaneously notify existing distributors that they no longer represented his album under the title "Section 8 R&B."

The Release Agreement required OarFin to "[s]erve notice to each and every distributor, retailer or other third party who may be engaged in any exploitation of the Distributed product and notify them that OarFin will no longer be representing the title as distributor." OarFin's

8

CEO has averred that "OarFin provided notice to eOne that OarFin no longer represented Mr. Nora or his music as distributor," but OarFin has not provided evidence as to the specific contents of any notice it provided to eOne or to any other distributor, retailer, or third party who may have been engaged in exploitation of the album. Nora has presented evidence that the notice sent by eOne to distributors and retailers in March 2010 after the execution of the Release Agreement referenced the Dookie Blu album entitled "My Testimony," but did not reference the album released under the titles "Section 8 R&B" or "Section 8 My RB." Nora's evidence indicates that eOne did not send out a notice with respect to the album "Section 8 R&B" until April 26, 2011, shortly after this litigation commenced. Viewing the evidence and inferences that may be drawn from the evidence in the light most favorable to Nora, the Court concludes that there are disputed issues of material fact as to whether OarFin provided the notice required pursuant to the Release Agreement "to each and every distributor, retailer or other third party who may be engaged in any exploitation of the Distributed product" with respect to each of the various titles under which OarFin distributed Nora's album. The Court recommends that summary judgment on Nora's breach of contract counterclaim also is inappropriate for this reason.

**B.     Nora's Counterclaim for Defamation of Character and Professional Reputation**

Nora asserts in his counterclaim for defamation that he has been defamed by OarFin's distribution of his album under various different titles and artist names. In response to OarFin's summary judgment motion, Nora also asserted that he was defamed by OarFin's release of explicit versions of his songs even though he wanted no explicit content to be released on the album.

9

"To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'" *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009) (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)). "A statement is defamatory when it 'tend[s] to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation.'" *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 573 (Minn. 1987) (quoting *Church of Scientology of Minnesota v. Minnesota State Medical Ass'n Foundation*, 264 N.W.2d 152, 155 (Minn. 1978)). Defamation which affects a "plaintiff in his business, trade, profession, office or calling," is defamation per se and is "thus actionable without any proof of actual damages." *Stuempges*, 297 N.W.2d at 255.

"Conduct, standing alone, does not form the basis for a defamation action." *Landers v. Nat'l R.R. Passenger Corp.*, No. 00-2233, 2002 WL 832588, *1 (D. Minn. Apr. 26, 2002) (citing *Bolton v. Department of Human Servs.*, 540 N.W.2d 523, 525-26 (Minn. 1995); *see also Ivers v. Church of St. William*, No. C2-98-519, 1998 WL 887536, *4 (Minn. Ct. App. Dec. 22, 1998) ("Minnesota does not recognize claims based on defamation by conduct or dramatic pantomime.") (citing *Bolton*, 540 N.W.2d at 523).

A plaintiff must plead and prove a defamation claim with a certain degree of specificity, including pleading who made the alleged defamatory statement, to whom the statements were made, and where the statements were made. *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1011 (8th Cir. 2005) (citation omitted); *Pinto v. Int'l Set, Inc.*, 650 F. Supp. 306, 309 (D. Minn. 1986). "Minnesota law has generally required that in defamation suits, the defamatory matter be set out verbatim." *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000).

10

Defamatory statements not contained in a plaintiff's complaint are beyond the scope of the plaintiff's claim. *Thompson v. Campbell*, 845 F. Supp. 665, 679 (D. Minn. 1994); *Benson v. Northwest Airlines, Inc.*, 561 N.W.2d 530, 538 (Minn. Ct. App. 1997).

In his counterclaim, Nora alleges that OarFin "has damaged the professional reputation and character of [Nora] by the conduct referred to above, specifically by marketing, distributing and selling the same album or CD under different titles and under different artists. . .[OarFin's] conduct and activities has damaged the professional reputation and character of [Nora]." (Docket No. 3, Counterclaim ¶¶ 13-14.) However, OarFin's release of the album is not a statement, but is conduct that alone cannot form the basis of a defamation action. Even if the Court considered the album titles and artist names used on the albums OarFin released to be "statements" by OarFin accompanying its conduct, Nora has not alleged that such statements are false but only that they harmed him because they are "different" from each other. As such, Nora has not sufficiently pleaded or presented evidence regarding the existence of a defamatory statement sufficient to support his defamation counterclaim.

Nora asserts that his defamation claim also is based on OarFin's release of explicit versions of his songs without his permission. That claim fails for the same reasons discussed above. It also fails because Nora did not plead this claim in his counterclaim and therefore cannot sustain a claim with respect to it. As discussed above, defamation claims must be pleaded with specificity and Nora is limited to the factual allegations set forth in his pleadings with respect to his defamation claim.

For these reasons, the Court recommends that summary judgment be granted to OarFin on Nora's counterclaim for defamation of character and professional reputation.

### C. Nora's Claims in the Related Case

In its summary judgment motion, OarFin moves for summary judgment as to the claims Nora asserted in the Related Case. OarFin has not filed a separate motion for summary judgment in the Related Case. OarFin's attempt to move for summary judgment in a separate case is procedurally improper and the Court therefore recommends that it be denied.

### **CONCLUSION**

Based upon the record, memoranda, and oral arguments of counsel,

I. **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 38) be **GRANTED IN PART and DENIED IN PART** as follows:

   a. Plaintiff's motion for summary judgment as to Nora's counterclaim for breach of contract be **DENIED**;

   b. Plaintiff's motion for summary judgment as to Nora's counterclaim for defamation of character and professional reputation be **GRANTED**; and

   c. Plaintiff's motion for summary judgment as to Nora's claims in the related proceeding, *Tony Nora a/k/a Dookie Blu v. OarFin Distribution, Inc., Robert C. Pickering, Jr., E1 Entertainment US LP, and Koch Entertainment LP*, Civ. No. 12-393 (PJS/AJB) be **DENIED**.

II. **IT IS HEREBY ORDERED** that Nora's Motion for Leave to File a Late Response (Docket No. 52) is **GRANTED**.

Dated: August 24, 2012  
s/ Arthur J. Boylan  
Chief Magistrate Judge Arthur J. Boylan  
United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court on or before  September 10  , 2012.