# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

OarFin Distribution, Inc., a Minnesota
Corporation,

        Plaintiff,

vs.

Tony C. Nora, p/k/a "Dookie Blu," an
Individual,

               Defendant.

Tony Nora, a/k/a Dookie Blu,

        Plaintiff,

vs.

OarFin Distribution, Inc.; Robert C. Pickering,
Jr.; E1 Entertainment U.S., LP; Koch
Entertainment, LP

              Defendants,

E1 Entertainment U.S., LP

             Cross-Claimant,

vs.

OarFin Distribution, Inc.; Robert C. Pickering,
Jr.,

             Cross-Defendant.

Civil File No.: 0: 11-cv-00863 (PJS/AJB)[1]

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Maxwell S. Felsheim and Russell M. Spence, Jr., Hellmuth & Johnson, PLLC, 8050 West 78th
Street, Edina, MN 55439, for OarFin Distribution, Inc. and E1 Entertainment U.S., LP.

Tony Nora, 1310 West Avenue I, Temple, Texas 76504, pro se.

---

[1]     This is a consolidated action of two separately filed-lawsuits: Case No. 11-cv-863, filed
in this District, and Case No. 12-cv-393, originally filed in the Western District of Texas and
thereafter transferred to this District.

## INTRODUCTION

This matter is before the Court, United States Chief Magistrate Judge Arthur J. Boylan, on a Motion for Summary Judgment by OarFin Distribution, Inc. ("OarFin") and E1 Entertainment U.S., LP ("eOne") (Docket No. 78[2]) and a Motion for Partial Summary Judgment by Tony Nora (Docket No. 75). The matter has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). A hearing was held on the motions on January 14, 2013 at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota. Russell Spence, Jr. appeared on behalf of OarFin and eOne. Tony C. Nora appeared pro se by telephone.

OarFin and eOne seek summary judgment on Tony Nora's claims of copyright and trademark infringement and counterclaim for breach of contract in this consolidated action. Nora seeks summary judgment in his favor on the same claims. For the reasons discussed below, the Court recommends that OarFin and eOne's motion for summary judgment be granted in part and denied in part and that Nora's motion for summary judgment be denied.

## FACTUAL BACKGROUND

OarFin is a Minnesota corporation that distributes recorded music and other entertainment products. EOne is a Delaware corporation and a distributing agent that partners with OarFin. Nora is a recording artist who resides in Texas. Nora records music under the artist name "Dookie Blu."

On August 15, 2009, OarFin entered into a Distribution Agreement with Nora whereby OarFin would distribute songs owned by Nora. (Docket No. 42, Affidavit of Robert Pickering

---

[2]     Unless otherwise noted, all references to Docket Numbers in this Report and Recommendation refer to documents maintained in the file of the Lead Case, No. 11-cv-863. When citing documents maintained in the file of the Member Case, No. 12-cv-393, the Court will specifically state as such.

("Pickering Aff."), Ex. A.)  OarFin worked with eOne on distribution of Nora's album.  (*Id.* at ¶¶ 10-11; Docket No. 77, Nora Mem. at p. 2.)  OarFin and eOne prepared Nora's album for release and distribution.  (Pickering Aff. ¶ 11.)

In 2008, Nora had registered a copyright for a sound recording titled "sorry baby daddy for to long" containing nine songs, all of which were among the songs OarFin was to distribute on behalf of Nora.  (*See* Docket No. 41, Affidavit of Russell M. Spence Jr. ("Spence Aff.," Ex. D.[3])  This is the only copyright registration Nora has related to the songs and/or album at issue in this litigation.  (*See* Docket No. 81, Affidavit of Maxwell S. Felsheim, Ex. A.)

On July 29, 2009, Nora sent OarFin a set of songs entitled "My Testimony" and certain album artwork.  (Pickering Aff. ¶¶ 5, 7.)  OarFin and eOne used these materials, including the "My Testimony" title and album cover artwork, for distribution and promotion of Nora's album.  (*Id.* at ¶ 11.)  At some point after July 29, 2009, Nora provided OarFin with different album artwork for use with his album and informed OarFin that he wanted the album to be entitled "Section 8 R&B."  (*Id.* ¶ 12.)  Thereafter, OarFin and eOne used this album artwork and album title for future promotion and distribution.  (*Id.* at ¶ 13.)  The Distribution Agreement does not specify the name under which Nora's album was to be released.  (*See id.* at Ex. A.)

Nora's album was released on November 24, 2009.  (*See* Docket No. 77, Nora Mem. at p. 5.)  It appears that on some of the distributed albums, Nora's recording name was spelled "Dookie Blue" rather than "Dookie Blu"; the album also appears to have been distributed under

---

[3]     The Pickering and Spence affidavits and exhibits were submitted in connection with OarFin's previous motion for summary judgment and are cited by both sides in their current summary judgment submissions.

several titles, including "My Testimony," "Section 8 R&B," and "Section 8 My RB." (*See* Docket No. 51, Nora Exs. C, D, E, I, J, K.[4])

On March 10, 2010, the parties executed an Agreement and Release (the "Release Agreement") in which they agreed to dissolve their relationship. (*See* Docket No. 80, OarFin Mem. at p. 6.) Pursuant to the Release Agreement, OarFin agreed to pay Nora $15,000, "representing full and final payment in respect of any and all monies becoming due and payable to you." (Pickering Aff., Ex. C.) The Release Agreement required OarFin to notify "each and every distributor, retailer or other third party who may be engaged in any exploitation of the Distributed product and notify them that OarFin will no longer be representing the title as distributor" and to "return to [Nora] any inventory that they currently have in their possession currently at 240 units." (*Id.*) In exchange, Nora agreed to release all claims against OarFin. (*Id.*)

After the parties executed the Release Agreement on March 10, 2010, OarFin notified eOne that OarFin no longer represented Nora or his music as a distributor. (Pickering Aff. ¶ 16.) The contents of this notice are not in the record. On or about March 17, 2010, eOne sent an e-mail to several retailers advising them that it had lost digital rights to the album, "Dookie Blue My Testimony." (Docket No. 51, Nora Ex. D.)

After the parties executed the Release Agreement on March 10, 2010, OarFin returned the 240 physical copies of the album to Nora. (Deposition of Tony Nora ("Nora Dep.") at 115-116, Docket No. 86, Affidavit of Maxwell S. Felsheim, Ex. A.) Nora subsequently gave away all but one or two of the 240 albums returned to him. (*Id.* at 116.)

---

[4]     Nora's exhibits attached to Docket No. 51 were submitted in connection with OarFin's previous motion for summary judgment and are cited by both sides in their current summary judgment submissions.

After the parties executed the Release Agreement on March 10, 2010, Nora immediately began distributing his music through other channels, including a distribution relationship with Island Def Jam and distribution through TuneCore, an internet distribution provider. (Nora Dep. at 139, 141, 144-45.)

In June 2010, Nora contacted OarFin and eOne and told them that his album "Section 8 R&B" was still available for purchase from OarFin/eOne. (*See* Docket No. 51, Nora Ex. A.) In response, an eOne vice president advised Nora that eOne never released or distributed the album under the name "Section 8 R&B." (*See id*.) However, OarFin acknowledges in its summary judgment papers that it did distribute Nora's album under the name "Section 8 R&B." (*See* Docket No. 80, OarFin Mem. at pp. 5-6; Pickering Aff. ¶¶ 13, 19.)

On April 26, 2011, shortly after the filing of the lawsuits, eOne sent an e-mail advising several retailers that it had lost the rights to the Dookie Blu album "Section 8 R&B." (Docket No. 51, Nora Ex. E.) There is no information in the record regarding whether either OarFin or eOne previously had given notice that OarFin no longer represented the title "Section 8 R&B" as distributor. After March 2010, it appears that some sales occurred of Nora's individual songs and of his album entitled "Section 8 R&B." (*See, e.g.*, Nora Exs. F, I.) Such sales were made by third parties. (*See id.*)

## PROCEDURAL HISTORY

On April 7, 2011, OarFin filed a lawsuit against Nora for breach of contract, defamation, and tortious interference with prospective business advantage in this District (the "Minnesota-initiated action"). (Docket No. 1.) On April 11, 2011, Nora filed a separate lawsuit for copyright and trademark infringement captioned *Tony Nora a/k/a Dookie Blu v. OarFin*

*Distribution, Inc., Robert C. Pickering, Jr.,*[5] *E1 Entertainment U.S. LP, and Koch Entertainment LP,*[6] No. W-11-cv-0083, in United States District Court for the Western District of Texas (the "Texas-initiated action"). (Case No. 12-cv-393, Docket No. 1.) On June 13, 2011, Nora answered OarFin's complaint in the Minnesota-initiated action and brought counterclaims against OarFin for breach of contract and defamation of character and professional reputation. (Docket No. 3.) On June 24, 2011, eOne answered Nora's complaint in the Texas-initiated action and asserted crossclaims against OarFin. (Case No. 12-cv-393, Docket No. 14.)

On August 19, 2011, OarFin filed a motion to dismiss, or in the alternative, to transfer the Texas-initiated action. (Case No. 12-cv-393, Docket No. 19.) That motion was granted with respect to transfer and on February 15, 2012, the Texas-initiated action was transferred to this District.[7] (Case No. 12-cv-393, Docket No. 33.) Thereafter, eOne's crossclaims against OarFin were dismissed pursuant to stipulation of the parties. (Case No. 12-cv-393, Docket Nos. 34-35.)

On June 7, 2012, OarFin filed a motion for summary judgment in the Minnesota-initiated action. (Docket No. 38.) In ruling on the motion, the Court accepted late filings submitted by Nora, but ruled that the Court would not accept any future late filings from Nora. (Docket No.

---

[5]    Robert C. Pickering, Jr. has been dismissed from the action for lack of personal jurisdiction. (Case No. 12-cv-393, Docket No. 31.)

[6]    EOne is the successor in interest to Koch Entertainment LP. (*See* Case No. 12-cv-393, Docket No. 14, eOne's Answer at pp. 1, 9.) To the extent Nora's Complaint asserts claims against Koch Entertainment LP separately from claims against its successor in interest eOne, the Court recommends that those claims be disposed of in the same manner recommended below with respect to claims against eOne.

[7]    After OarFin's motion to dismiss or transfer was granted in part with respect to transfer, OarFin did not file an answer to Nora's Complaint in the Texas-initiated action. Nora has not objected to OarFin's failure to file an answer in the Texas-initiated action. Considering the consolidation of the cases, the totality of the pleadings in both cases, and the procedural posture and procedural history of the litigation, the Court will consider OarFin's motion for summary judgment as to claims in the Texas-initiated action as a response in lieu of an answer.

57, Report and Recommendation at p. 5, adopted by Order at Docket No. 58.) OarFin's motion was granted in part and denied in part: summary judgment in favor of OarFin was granted on Nora's counterclaim for defamation and summary judgment was denied on Nora's counterclaim for breach of contract. (Docket No. 58.) OarFin also sought summary judgment on Nora's claims in the separately filed Texas-initiated action in its motion for summary judgment in the Minnesota-initiated action. (Docket No. 38.) That portion of OarFin's motion was not considered by the Court and was denied as procedurally improper. (*See* Docket Nos. 57-58.)

On September 26, 2012, OarFin and eOne filed a motion to consolidate the two actions. (Docket No. 59.) The motion was granted on October 15, 2012. (Docket No. 66.) After the consolidation of the cases, the Court entered an amended scheduling order setting a deadline for the parties to file any remaining dispositive motions. (Docket No. 73.) The present motions follow.

OarFin and eOne filed the present motion for summary judgment on November 21, 2012. (Docket No. 78.) OarFin and eOne seek summary judgment on all of Nora's remaining claims in both the Texas-initiated action and Minnesota-initiated action. Nora also filed his motion for summary judgment on November 21, 2012. (Docket No. 75.) Nora also seeks summary judgment on all of his remaining claims in both the Texas-initiated action and Minnesota-initiated action.

Pursuant to court order, Nora's response to OarFin's motion was due on December 7, 2012 and any reply memorandum in support of his own motion was due on December 14, 2012. (Docket No. 73.) Nora filed an opposition memorandum on December 7, 2012 as required, but later filed additional materials on January 11, 2013. (Docket Nos. 83, 88-89.) As discussed above, this Court has already ruled that the undersigned will not accept any further late filings

from Nora.  Accordingly, Nora's late submissions (Docket Nos. 88-89) are hereby **stricken** and the Court will not consider them in ruling on the present motions.

**DISCUSSION**

## I.     STANDARD OF REVIEW

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and it must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  If the movant satisfies its burden, the party opposing the motion must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).

## II.     ANALYSIS

### A.     Nora's Copyright Claims

Nora brings claims against OarFin and eOne for copyright infringement in violation of the Copyright Act of 1976 and for violations of the Digital Millennium Copyright Act, the Digital Theft Deterrence and Copyright Damages Improvement Act, and the No Theft Act.

#### 1.   Copyright infringement

To sustain a claim for copyright infringement, a plaintiff must present proof of (1) ownership of a valid copyright; and (2) copying of the copyrighted work.  *Thimbleberries, Inc. v.*

*C & F Enters., Inc.,* 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001) (citing *Moore v. Columbia Pictures Indus., Inc.,* 972 F.2d 939, 941 (8th Cir. 1992)).  OarFin and eOne argue that they are entitled to summary judgment on Nora's copyright claim for two reasons: first, because Nora cannot prove he owns a copyright for the album "Section 8 R&B," and second, because their pre-March 10, 2010 distribution of Nora's work was authorized under the Distribution Agreement and Nora cannot prove they distributed the album after execution of the Release Agreement.

OarFin and eOne challenge Nora's ownership of a valid copyright, arguing that Nora did not register a copyright under the title "Section 8 R&B."  However, the undisputed facts reflect that Nora registered a copyright for a title of work "sorry baby daddy for to long," the contents of which included the songs that were ultimately the subject of the Distribution Agreement between Nora and OarFin and included on the album "My Testimony"/"Section 8 R&B."  (*See* Docket No. 41, Spence Aff., Ex. D.)  Because it is the content of a work, rather than the title of a work, that is afforded copyright protection, OarFin's and eOne's first argument fails.  *See, e.g.*, *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 840-41 (M.D. Tenn. 2006) (registered copyright of a collection of songs extends copyright protection to the collection as a whole as well as to each of the individual songs, even when individual songs are not listed on the copyright registration).

OarFin and eOne also argue they are entitled to summary judgment as to copyright infringement because Nora has come forward with no admissible evidence that they distributed or sold Nora's copyrighted works without authorization after the execution of the Release Agreement.  Nora opposes OarFin's motion and supports his own motion for summary judgment by arguing that OarFin and eOne must have continued to make new distributions of his album after March 10, 2010 in order for new sales to take place after that time and that it should not

have taken so long for digital sales of his album to cease. (Docket No. 83, Nora Mem. at pp. 6-7.) As OarFin points out, however, the source of continued sales of Nora's album after execution of the Release Agreement could have been albums that were distributed by OarFin and eOne to third party retailers prior to the execution of the Release Agreement or Nora's own distribution of his album through other channels after execution of the Release Agreement. (*See* Docket No. 85, OarFin Reply Mem. at pp. 3-4 and sources cited therein.) OarFin has presented affidavit evidence that it did not distribute or authorize distribution of Nora's music after entering into the Release Agreement. (Pickering Aff. ¶ 17.) Although Nora did present evidence in opposition to OarFin's prior summary judgment motion that indicated third party sales of his album or individual songs were made after March 10, 2010 (*see, e.g.*, Docket No. 51, Nora Exs. F, I), Nora's evidence does not specifically tie OarFin or eOne to such sales. The sales were made by third parties and there is nothing on the face of the documents submitted by Nora indicating that the distribution source of the sales was unauthorized post-March 10, 2010 distributions by OarFin. Accordingly, Nora has not presented evidence that OarFin or eOne violated his copyright rights through unauthorized use of a copyrighted work. For this reason, the Court recommends that summary judgment in favor of OarFin and eOne is appropriate on Nora's copyright claim.

### 2. Digital Millennium Copyright Act

The Digital Millennium Copyright Act ("DMCA") was enacted in 1998 to implement the World Intellectual Property Organization Copyright Treaty ("WIPO"). *Davidson & Associates v. Jung*, 422 F.3d 630, 639-40 (8th Cir. 2005). "WIPO requires contracting nations to provide adequate legal protection and effective legal remedies against the circumvention of effective technological measures that are used by authors in connection with the exercise of their rights

under this Treaty or the Berne Convention and that restrict acts, in respect of their works, which are not authorized by the authors concerned or permitted by law." *Id.* (internal quotations omitted). The DMCA prohibits a person from circumventing technological measures used by copyright owners to protect their works or from trafficking in technology used for the purpose of circumventing such technological measures. 17 U.S.C. § 1201. The DMCA also prohibits tampering with copyright management information. 17 U.S.C. § 1202.

OarFin and eOne argue that they are entitled to summary judgment on Nora's DMCA claim because Nora has not even alleged a violation of the DMCA and has no evidence of any violation. Nora's Complaint alleges that defendants violated the DMCA "by infringing on the copyrights owned by Plaintiff." (Compl. ¶ 21.) Nora's Complaint contains no allegations that OarFin or eOne circumvented or trafficked in technologies used for circumventing technological measures used by copyright owners to protect their works, nor any allegations that OarFin or eOne tampered with copyright management information. OarFin presented affidavit testimony that it never created, sold, imported, or delivered any hardware, software, or other technology used to circumvent technological copyright protection controls and never altered or removed any copyright management information related to Nora's copyrighted work with an intent to induce, enable, facilitate, or conceal copyright infringement. (Pickering Aff. ¶¶ 20-21.) In opposing OarFin and eOne's summary judgment motion and supporting his own motion, Nora has not presented any evidence that OarFin or eOne engaged in any such activity. Summary judgment in favor of OarFin and eOne on Nora's DMCA claim is appropriate.

       3.   Digital Theft Deterrence and Copyright Damages Improvement Act and No Electronic Theft Act

The Digital Theft Deterrence and Copyright Damages Improvement Act of 1999 was an amendment to 17 U.S.C. § 504 that increased statutory damages available for copyright

infringement.  *See* Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160 (1999) (codified as amended at 17 U.S.C. § 504(c)).  The No Electronic Theft Act amended criminal copyright infringement provisions found in U.S. Code Titles 17 and 18.  *See* No Electronic Theft (NET) Act, Pub. L. No. 105-147 (1997) (codified as amended at 17 U.S.C. §§ 101, 506-07 and 18 U.S.C.§§ 2319-20).

Nora's Complaint alleges that each defendant "has violated the terms of the Digital Theft Deterrence and Copyright Damages Improvement Act and No Theft Act by infringing on the copyright ownership of Plaintiff."  (Compl. ¶ 23.)  OarFin and eOne argue that they are entitled to summary judgment on Nora's claims under these acts because the acts were simply amendments to Titles 17 and 18 that created no independent causes of action.  The Court agrees.  The Court recommends that OarFin and eOne be granted summary judgment on Nora's claims under the Digital Theft Deterrence and Copyright Damages Improvement Act and No Electronic Theft Act.

### B.      Nora's Trademark Infringement Claim

In his Complaint, Nora alleges that he has "trademarked the Name 'Dookie Blu,' [and] the CD title 'Section 8 R&B,'" as well as the "CD cover." [8]  (Compl. ¶ 10.)  He alleges that defendants committed trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1501, *et seq.* by "altering the artist's name from 'Dookie Blu' to 'Dookie Blue,' changing the title of the CD from 'Section 8 R&B' to 'My Section 8 R&B,' 'Section 8 My R&B,' and 'My Testimony,' and then releasing such altered titles for public sale and profit."  (*Id.* at ¶ 25.)  In

---

[8]      Nora's opposition to summary judgment does not address his alleged trademark in the "CD cover" or OarFin and eOne's arguments that he has no valid mark to the "CD cover."  Accordingly, the Court considers any trademark claim based on the "CD cover" to be abandoned.  *See, e.g.*, *Thomsen v. Ross*, 368 F. Supp. 2d 961, 974 n. 9 (D. Minn. 2005) (concluding that plaintiff had abandoned claims not addressed in his response in opposition to summary judgment).

response to OarFin and eOne's motion for summary judgment, Nora admits that he did not register any trademarks, but argues that he gained trademarks in "Dookie Blu" and "Section 8 R&B" under principles of common law by marking his album and name with a trademark symbol.

The relevant portions of the Lanham Act, 15 U.S.C. § 1125, state as follows:

(1) Any person, who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographical origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

A trademark includes any word, name, symbol, or device or any combination thereof adopted and used by a person to identify and distinguish his or her goods from those manufactured or sold by others and to indicate the source of the goods. 15 U.S.C. § 1127. "A common-law trademark arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party." *Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 844 (D. Minn. 2005) (quoting *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996)). To prevail on a common law trademark infringement claim, a plaintiff must show that: (1) he has a protectable mark; (2) he has priority of use of that mark; and (3) defendant's subsequent use of that mark is likely to cause confusion. *Northland Ins. Cos. v.*

*Blaylock*, 115 F. Supp. 2d 1108, 1117 (D. Minn. 2000) (citing *General Mills, Inc. v. Kellogg Co.*, 824. F.2d 622, 626 (8th Cir. 1987)).  The proponent of the trademark "must demonstrate that the usage of the mark was deliberate and continuous, not sporadic, casual or transitory."  *Walt Disney*, 393 F. Supp. 2d at 844 (internal quotations omitted).

OarFin and eOne argue that Nora's trademark claim fails because, as a matter of law, he cannot have a valid protectable mark in either the recording name "Dookie Blu," or the album title "Section 8 R&B."  OarFin and eOne assert that neither the name of a recording artist on a sound recording nor the title of a single creative work are registrable marks with the United States Patent and Trademark Office.  (Docket No. 80, OarFin Mem. at p. 15.)  That may be true to some extent (although names of recording artists are registrable under certain circumstances), but OarFin's and eOne's argument ignores that "[w]hile titles of single works are not registrable, they may be protected under section 43(a) of the Lanham Act upon a showing of secondary meaning."  *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1163 n. 2 (Fed. Cir. 2002) (citing *EMI Catalogue P'ship v. Hill, Holliday Connors, Cosmopolous, Inc.*, 228 F.3d 56, 63 (2d Cir. 2000)).  Similarly, their argument ignores that personal names and the names of recording artists may be protected under Section 43(a) under certain circumstances.  *See, e.g.*, *Miller v. Glenn Miller Productions*, 318 F. Supp. 2d 923, 936 (C.D. Cal. 2004) (personal name of musician Glenn Miller subject to common law trademark where the name had obtained secondary meaning).

Although OarFin's and eOne's argument is not completely on target, the Court ultimately agrees that Nora has not shown he has a protectable mark.  Nora has presented no evidence nor even put forth any argument supporting the validity of his alleged marks in "Dookie Blu" or "Section 8 R&B."  Nora has presented no evidence from which the Court could conclude that his

usage of the mark "Dookie Blu" or the album title "Section 8 R&B" was "deliberate and continuous, not sporadic, casual or transitory" sufficient to obtain common law trademark rights. *See Walt Disney*, 393 F. Supp. 2d at 844. Nora has presented no evidence from which the Court could conclude that the title of his single creative work "Section 8 R&B" (nor his recording name "Dookie Blu") has acquired secondary meaning with consumers. *See Herbko*, 308 F.3d at 1163 n. 3. In the absence of any evidence or even any argument from Nora on these issues, the Court cannot find any genuine issue for trial as to whether he has valid protectable marks.

In addition, even if Nora had established the existence of a valid common law trademark in either the recording name "Dookie Blu" or the album title "Section 8 R&B," his trademark claim would still fail because he has not demonstrated that a likelihood of confusion exists. "The central issue in an action for trademark infringement or false designation of origin under the Lanham Act is whether the unauthorized use of the mark is likely to cause confusion." *Walt Disney*, 393 F. Supp. 2d at 845 (internal quotations omitted). "Likelihood of confusion exists when the defendant's use of a mark is likely to confuse, deceive or cause mistake among an appreciable number of ordinary buyers as to the source of or association between the parties' products or services." *Id.* Here, Nora has not even addressed consumer confusion and has presented absolutely no evidence regarding likelihood of confusion resulting from either the misspelling of his artist name or the varying titles under which his album was released. Nora does not even allege in his Complaint any possible instance of a consumer being deceived or confused that the album is the work of another artist named "Dookie Blue" rather than "Dookie Blu." *See Stratta v. George Duke Enterprises Inc.*, No. 96 Civ 2720(SS), 1997 WL 282250, 43 U.S.P.Q.2d 1628, 1632 (S.D.N.Y. May 22, 1997) (conductor Stratta's Lanham Act claim, which was based on the defendant's release of Stratta's album containing a misspelling of his name as

"Strata" on the album cover, failed where Stratta did not allege any possible instance of a consumer being deceived or confused that the album was the work of another conductor). Nor has Nora alleged or presented evidence that the various titles under which his album was purportedly released lead to any consumer confusion as to the source of the album.

"The sanctions for deception in the Lanham Act are directed to prohibiting a person from 'passing off' a good or service of one's own creation under the name or mark of another and to preventing a person from removing a name or trademark from a product and selling it in an unbranded state. The Lanham Act was never intended to cover a de minimis contractual mistake of partially misspelling a person's name on an album cover." *Stratta*, 1997 WL 282250, 43 U.S.P.Q.2d at 1632. Here, Nora's allegations regarding the misspelling of his name on the album cover and the purportedly incorrect names under which his album was released sound in contract, not trademark infringement. *See id.* "The Lanham Act, as true of other federal statutes, should not be used as a remedy for a bruised ego. The Lanham Act should not be used to transform a breach of contract dispute into a federal cause of action." *Id.* That is precisely what Nora is attempting to do here.

For the reasons discussed above, Nora's trademark infringement claim under the Lanham Act fails. The Court recommends that summary judgment in favor of OarFin and eOne be granted on Nora's trademark infringement claim.

### C. Nora's Counterclaim for Breach of Contract

Nora asserts in his breach of contract counterclaim that OarFin's alleged continued distribution of his album after March 10, 2010 violated the Release Agreement because the Release Agreement terminated OarFin's authority to market, distribute, and sell his work. Nora

also asserts in opposing OarFin's summary judgment motion that OarFin breached the Release Agreement by failing to give proper notice to eOne to stop distributing all titles of Nora's album.

The parties entered into the Release Agreement on March 10, 2010 to dissolve their existing relationship. Pursuant to the Release Agreement, OarFin agreed to pay Nora $15,000 and return to Nora all physical copies of the album. The Release Agreement required OarFin to notify "each and every distributor, retailer or other third party who may be engaged in any exploitation of the *Distributed product* and notify them that OarFin will no longer be representing *the title* as distributor." (Pickering Aff., Ex. C (emphasis added).)

      1.   OarFin's motion

OarFin has again moved for summary judgment on Nora's breach of contract claim, despite the fact that the Court has previously denied it summary judgment on this claim. This Court previously found that summary judgment on Nora's breach of contract claim was inappropriate because, "[v]iewing the evidence and inferences that may be drawn from the evidence in the light most favorable to Nora. . .there are disputed issues of material fact as to whether OarFin provided the notice required pursuant to the Release Agreement 'to each and every distributor, retailer or other third party who may be engaged in any exploitation of the Distributed product' with respect to each of the various titles under which OarFin distributed Nora's album." (Docket No. 57, Report and Recommendation at p. 9.)

In its current motion, OarFin does not acknowledge that the Court already denied it summary judgment on this claim nor request permission to file a motion to reconsider the issue. In addition, OarFin does not present any new evidence in support of summary judgment that would cause the Court to reconsider its previous analysis (such as, for example, the actual notice it provided to eOne pursuant to the Release Agreement, the contents of such notice, or

information regarding whether and when it gave notice with respect to both the album titles "My Testimony" and "Section 8 R&B" under which it distributed Nora's work). Rather, OarFin simply argues again that its CEO's representation that it "provided notice to eOne" is sufficient to warrant summary judgment.

The Court sees no reason to reconsider its previous recommendation. For the same reasons discussed by the Court on OarFin's previous motion for summary judgment (*see* Docket No. 57, Report and Recommendation at pp. 8-9), the Court again finds that viewing the evidence and inferences that may be drawn from the evidence in the light most favorable to Nora, there are disputed issues of material fact as to whether OarFin provided the notice required pursuant to the Release Agreement "to each and every distributor, retailer or other third party who may be engaged in any exploitation of the Distributed product and notify them that OarFin will no longer be representing the title as distributor" with respect to *each title* under which OarFin distributed Nora's album. The Court again recommends that summary judgment for OarFin on Nora's breach of contract counterclaim is inappropriate for this reason.

### 2. Nora's motion

Nora moves for summary judgment in his favor on the breach of contract claim, arguing that his evidence conclusively proves OarFin violated the Release Agreement by continuing to distribute his music after March 10, 2010. OarFin disputes the authenticity and admissibility of Nora's documentary evidence and argues that even if considered, the evidence does not show that OarFin engaged in any unauthorized distribution of Nora's album after March 10, 2010. As discussed above in relation to Nora's copyright claims, although Nora has presented evidence indicating that sales of his album or of individual songs took place after March 10, 2010, he has not presented any evidence conclusively tying any of those sales to new distributions by OarFin

after March 10, 2010. Such sales could have been the result of third parties selling off copies of the album that were distributed by OarFin prior to executing the Release Agreement; such sales also could have been the result of sales made through other distribution channels Nora used after execution of the Release Agreement. OarFin has presented affidavit testimony that it did not distribute or authorize distribution of Nora's music after entering into the Release Agreement. Nora's evidence does not overcome this affidavit testimony or support summary judgment in his favor. The Court recommends that Nora's motion for summary judgment in his favor on his breach of contract claim be denied.

## CONCLUSION

For the reasons discussed above, the Court recommends that summary judgment in favor of OarFin and eOne be granted on all of Nora's claims in the Texas-initiated action (Case No. 12-cv-393): for copyright infringement under the Copyright Act of 1976, violations of the Digital Millennium Copyright Act, the Digital Theft Deterrence and Copyright Damages Improvement Act, and the No Theft Act, and trademark infringement under the Lanham Act; the Court recommends that Nora's motion for summary judgment on these claims be denied for the same reasons. In addition, as discussed above, the Court recommends that both parties be denied summary judgment on Nora's counterclaim for breach of contract in the Minnesota-initiated action (Case No. 11-cv-863).

Nora's only remaining claim for trial is his breach of contract counterclaim against OarFin pleaded in the Minnesota-initiated action. In addition, OarFin's claims against Nora in the Minnesota-initiated action for breach of contract, defamation, and tortious interference with prospective business advantage remain for trial.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY RECOMMENDED** that:

I.     The Motion for Summary Judgment by OarFin Distribution, Inc. and E1 Entertainment U.S., LP (Docket No. 78) be **GRANTED IN PART AND DENIED IN PART as follows:**

    A.     The motion be **GRANTED** on Nora's claims in the Texas-initiated action, Case No. 12-cv-393 for:

        1.     copyright infringement under the Copyright Act of 1976;

        2.     violations of the Digital Millennium Copyright Act, the Digital Theft Deterrence and Copyright Damages Improvement Act, and the No Theft Act; and

        3.     trademark infringement under the Lanham Act;

    B.     The motion be **DENIED** on Nora's counterclaim for breach of contract in the Minnesota-initiated action, Case No. 11-cv-863; and

    C.     To the extent Nora pleaded claims in Case No. 12-cv-393 against eOne's predecessor in interest Koch Entertainment LP separately from claims against eOne, those claims also be **dismissed** and that Case No. 12-cv-393 be **dismissed** in its entirety.

II.    The Motion for Partial Summary Judgment by Tony Nora (Docket No. 75) be **DENIED**.

Dated: April 1, 2013                         s/ Arthur J. Boylan
                                             Chief Magistrate Judge Arthur J. Boylan
                                             United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court on or before  April 15 , 2013.